Bill SNIPES, Plaintiff,

v.

PARAMOUNT LIQUOR COMPANY OF MISSOURI, Defendant.

No. 80–4193–CV–CH.

United States District Court,
W. D. Missouri, C. D.

July 30, 1982.

Fred Dannov, Columbia, Mo., for plaintiff.

E. J. Holland, Jr., James G. Baker, Spencer, Fane, Britt & Browne, Kansas City, Mo., for defendant.

## OPINION

ELMO B. HUNTER, Senior District Judge.

This is an action brought pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., to recover unpaid overtime compensation allegedly due the plaintiff for hours worked in excess of 40 hours per week for the period beginning September 23, 1978, and ending May 8, 1980. Plaintiff seeks $19,330.91 in unpaid overtime compensation [1] as well as an additional equal amount as liquidated damages and attorney's fees, all pursuant to 29 U.S.C. § 216(b). On June 9, 1982, a full trial on the merits was scheduled before the Court in Jefferson City, Missouri. At that time, the matter was fully tried and submitted to the Court for disposition.

Having carefully considered the entire record before it, the Court finds that the plaintiff was employed by the defendant in a bona fide executive capacity for the period beginning September 23, 1978, and ending May 8, 1980, and that, pursuant to 29 U.S.C. § 213(a), he is exempt from receiving overtime compensation under the provisions of 29 U.S.C. § 207. Accordingly, judgment is entered for the defendant.

The following facts were stipulated by the parties and required no proof at trial. This Court has subject matter jurisdiction over the issues raised in this action and venue properly lies in the Central Division of the United States District for the Western District of Missouri. The defendant is engaged in the wholesale distribution of distilled spirits and operates a facility at 2210 Nelwood Drive in Columbia, Missouri. Further, the defendant is an enterprise engaged in commerce within the meaning of the Fair Labor Standards Act, 29 U.S.C.

§ 207(a)(1), and comes under the jurisdiction of that Act. The plaintiff was employed by the defendant during the period beginning September 23, 1978, and ending May 8, 1980.[2]

As noted earlier, the issues in this case regard only the time period September 23, 1978, to May 8, 1980. During that period the plaintiff alleges that he worked a total of 1763.5 hours in excess of 40 hours per week and that the total overtime compensation due him is $19,330.91.

The defendant first argues that, although the plaintiff was employed by the defendant, he was employed in a bona fide executive capacity and is therefore exempted from receiving overtime compensation. 29 U.S.C. § 213(a). Second, the defendant asserts that even if the plaintiff is entitled to overtime compensation, the number of overtime hours and the amount of compensation claimed by the plaintiff are inaccurate. The Court's resolution of the first issue makes consideration of this second issue unnecessary.

## THE EVIDENCE

The plaintiff is currently 47 years' old and has completed education through the ninth grade. He is now employed as an attendant at an automobile service station. The defendant is a Missouri corporation and the subsidiary of its St. Louis, Missouri, based parent company, Paramount Liquors. The defendant company serves a forty-four county distribution area in Central Missouri.

The plaintiff began working for the parent company in 1974. At that time, he was employed as a dispatcher and received, at its highest point, a salary of approximately $1,100.00 per month ($13,200.00 per year).

1. At the trial of this matter, plaintiff was granted leave of Court to amend his prayer for unpaid overtime compensation and liquidated damages to conform to the evidence presented.

2. The plaintiff, and other warehouse workers employed by the defendant on May 8, 1980, ceased their employment on that date due to the commencement of a union authorized strike. The warehouse employees, including the plaintiff, voted in the Spring of 1980 to form a union. Contract negotiations between that union and the defendant were unsuccessful and on May 8, 1980, the union members, including plaintiff, went on strike. By the end of July, 1980, the defendant had succeeded in hiring new employees to replace those who struck. None of the striking employees returned to the defendant's employ.

As a dispatcher the plaintiff worked no overtime, nor was he a member of any union nor subject to any agreement between a union and the company.

In 1976, the parent company expanded its operations to Columbia, Missouri, and opened the defendant company as its subsidiary. With the opening of the defendant, the plaintiff was offered a transfer from St. Louis to Columbia. He accepted the transfer at the same salary he had received as a dispatcher in St. Louis. No other agreement regarding wages or salary was reached between the plaintiff and the defendant company. The plaintiff's transfer to Columbia was evidenced by a letter from James T. Owen, Vice-President of the defendant company, to Joseph Sommer, its Secretary-Treasurer.[3] The letter, dated July 14, 1976, stated in part, that the plaintiff "will be in charge of delivery and warehouse operations of our new warehouse at 2210 Nelwood Drive, Columbia, Missouri." Organizational charts [4] prepared during the years 1978 and 1979 which reflect the management hierarchy of the company corroborate this description of the plaintiff's responsibility. They classify the plaintiff as a distribution manager responsible for a staff of warehouse and truck driver personnel.

At the time of his transfer the plaintiff was the only warehouse employee working for the defendant company. Other warehouse employees were eventually added, but the plaintiff remained the oldest employee in the warehouse. During the relevant time period, the plaintiff was earning a salary of approximately $15,000.00 per year. As calculated by plaintiff, that salary translates into an hourly wage of $7.23 per hour.[5]

The plaintiff testified that over the years his duties and responsibilities at the defendant company have almost exclusively included truck driving, delivery, and general warehouse work. According to the plaintiff, these duties and responsibilities generally remained the same when he was the sole warehouse employee, as well as after other warehouse employees were added. Further, he testified that they were the same duties and responsibilities delegated to the other warehouse employees. It is undisputed that everyone who worked in the warehouse, except the plaintiff, was paid on an hourly basis and entitled to receive overtime compensation. The plaintiff testified that on two separate occasions, he made inquiry about receiving overtime compensation.[6] Both requests were denied.

Two co-employees [7] testifying on behalf of the plaintiff stated that the plaintiff had no responsibilities or duties in addition to or different from the responsibilities and duties of other warehousemen. They further testified that they did not consider the plaintiff as their supervisor, that he did not participate in employee disciplinary decisions and that he did not participate in the interviewing or hiring process for warehouse personnel.[8]

Much of this testimony is directly contradicted by the testimony of Charles Mitchell,

---

**3.** *See* Defendant's Exhibit No. 2.

**4.** The uncontroverted testimony indicates that these organizational charts were prepared on a periodic basis in the normal course of business operations.

**5.** The next highest paid warehouse employee received, at its highest, a wage of $4.62 per hour.

**6.** The plaintiff's supervisor and branch manager, Charles Mitchell, testified that he did not recall either occasion on which the plaintiff allegedly requested overtime compensation. He further testified that the plaintiff was not given a specific schedule of work hours which he was expected to keep.

**7.** Robert Brown and Mitchell Zimmer were both employed as hourly employees in defendant's warehouse during at least part of the relevant time period. Mr. Brown was originally a plaintiff in this action, but his claim has subsequently been settled and dismissed.

**8.** Mr. Zimmer did testify that he had talked to the plaintiff when applying for a job with the defendant company. He talked to the plaintiff about his own qualifications for the job because he had the impression from a friend who worked at the defendant company that he had to "see" the plaintiff about employment there.

the branch manager of the defendant company, and Karen Palmer, its office manager. Mr. Mitchell has been branch manager since 1976 and has been the plaintiff's immediate supervisor since then. He has been associated with the defendant company or its parent company for fourteen years. Mr. Mitchell's salary during the time period in question was in the range of $16,000.00 to $17,000.00 per year.

According to Mr. Mitchell, the defendant's organizational charts accurately reflect the plaintiff's job classification as distribution manager,[9] a position which included numerous duties and responsibilities not held by other warehouse employees. The differential in plaintiff's salary and that of other warehousemen was attributed to this classification and the additional responsibilities and duties he had. Mr. Mitchell detailed these additional duties and responsibilities at length.

The plaintiff had the responsibility of assigning work hours for warehouse personnel, assigning drivers to particular trucks and routes, verifying that merchandise orders were properly filled and loaded onto delivery trucks,[10] designating the sequence in which orders would be filled, and ordering merchandise for the warehouse.[11] The maintenance of receiving records, which detailed merchandise received into the warehouse, was required by the State of Missouri. The plaintiff had the primary responsibility for maintaining and signing these records. Occasionally, however, these records would be maintained and signed by other warehouse personnel, particularly in the absence of the plaintiff. The plaintiff was also the only person in the warehouse who had the authority to sign credit vouchers issued to customers who received damaged or defective merchandise. A physical inventory was taken at the warehouse every thirty days. It was the responsibility of the plaintiff, the branch manager, and the office manager to see that the inventory was successfully completed.

The plaintiff also had responsibility for various personnel matters affecting warehouse personnel. It was his duty to calculate and verify on each warehouse employee's time card the total number of hours worked in a given period. When warehouse personnel requested a short period of time off it was the plaintiff's responsibility to authorize and schedule the time. Complaints regarding working conditions were to be made to the plaintiff, although some of the warehouse employees testified they made their complaints directly to the branch manager. Customer complaints were to be directed to the branch manager, the plaintiff or the office manager.

The plaintiff also had a degree of responsibility regarding the composition and size of the warehouse work force. Warehouse employee applicants were initially sent to the plaintiff for an interview. Afterward, the plaintiff would make a recommendation to the branch manager as to whether the individual should be hired. Normally, these recommendations were followed. The plaintiff also made recommendations concerning warehouse employee terminations and salary increases, together with recommendations concerning the warehouse work force size.

Finally, the plaintiff had the responsibility of maintaining the defendant company's fleet of three delivery trucks in good repair. He could authorize certain repairs and arrange for the rental of replacement trucks.

According to the estimate of Mr. Mitchell, the branch manager, the plaintiff's time at work was divided approximately half and

9. In rebuttal, the plaintiff submitted a list of the defendant's employees, their position with the company and their addresses. This list was prepared by the office manager on March 7, 1978. It is unclear what purpose the list was prepared for, what use was made of the list, or who saw the list. The plaintiff was described on the list as a "warehouseman." *See* Plaintiff's Exhibit No. 2.

10. The plaintiff testified that this was the responsibility of each individual driver. He merely assisted drivers in loading the trucks.

11. These orders totaled between $50,000.00 and $100,000.00 per month.

half between management responsibilities and physical labor. In the absence of Mr. Mitchell, the plaintiff was the ranking employee. Similarly, in the absence of the plaintiff, most of his responsibilities, beyond physical labor, were performed by Mr. Mitchell. Mr. Mitchell seldom was present in the warehouse overseeing activities. Most of his time was spent in the field with his sales force.

## DISCUSSION

The relevant portion of 29 U.S.C. § 207(a)(1) which provides for overtime compensation states:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

An exception to this requirement is found at 29 U.S.C. § 213(a)(1):

> (a) The provisions of section 206 ... and section 207 of this title shall not apply with respect to—
>
> (1) any employee employed in a bona fide executive, administrative, or professional capacity ....

■ These exemptions are to be narrowly construed against the employer. *A. H. Phillips, Inc. v. Walling*, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945); *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959). In invoking this exemption, the employer carries the burden of proving the applicability to the plaintiff. *Idaho Sheet Metal v. Wirtz*, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966); *Brennan v. South Davis Community Hospital*, 538 F.2d 859 (10th Cir. 1976).

The phrase "employee employed in a bona fide executive ... capacity" is defined at 29 C.F.R. § 541.1(f): [12]

> The Term "employee employed in a bona fide executive ... capacity" in section 13(a)(1) of the act shall mean any employee:
>
> (f) Who is compensated for his services on a salary basis at a rate of not less than ... $250.00 per week ... and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

■ This "short test" to find employment in a bona fide executive capacity has two requirements. First, the employee's "primary duty" must be management and second, he must regularly direct the work of at least two other employees. *See Donovan v. Burger King Corp.*, 672 F.2d 221, 223 (1st Cir. 1982). It is not disputed that there were two or more employees working in the warehouse with the plaintiff. The important issue for resolution is whether the plaintiff's primary duty was management.

■ The phrase "primary duty" is further defined at 29 C.F.R. § 541.103 (hereinafter § 541.103). This section suggests various factors that are to be considered in determining whether an employee's primary duty is management. One factor is the amount of time spent in the performance of management duties, although this is not the sole test. Other factors to consider include the relative importance of the managerial duties as compared with other types of non-exempt duties, the frequency with which the employee exercises discretionary powers, the employee's relative freedom from supervision, and the relationship between his salary and the wages paid other employees. § 541.103. *See also Marshall v.*

12. The parties agree and the undisputed evidence requires that the test employed by § 541.1(f) be used to determine if the plaintiff is an executive exempt from overtime compensation, rather than the test employed by § 541.1(a)–(e).

*Truman Arnold Distribution Co., Inc.*, 640 F.2d 906 (8th Cir. 1981). As a rule of thumb, § 541.103 notes that primary duty means that a major part, or over 50%, of the employees time is concerned with managerial functions. However, for employees who earn more than $250.00 per week, the 50% rule is a guideline which must be considered in conjunction with the other factors. It is not a strict requirement. 29 C.F.R. § 541.103(f). *See also Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (2d Cir. 1982). In this case, the plaintiff's supervisor estimated that the plaintiff spent at least 50% of his time performing managerial tasks. This estimate is consistent with the testimony describing the nature of the plaintiff's work and responsibilities. Further, the plaintiff's duties and responsibilities closely tract one of the examples specifically given in § 541.103:

> For example, in some departments, or subdivisions of an establishment, an employer has broad responsibilities similar to those of the owner or manager of the establishment, but generally spends more than 50 percent of his time in production or sales work. While engaged in such work he supervises other employees, directs the work of warehouse and delivery men, approves advertising, orders merchandise, handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require. He will be considered to have management as his primary duty.

The evidence indicates the plaintiff performed many of the duties cited in the Regulation's example. He supervised others in the warehouse, directed and scheduled their work activity, was responsible for ordering merchandise, took customer complaints, and authorized the payment of bills. This was all in addition to the exempted duties he performed in the warehouse. Thus, even if, as plaintiff claims, he spent more than 50% of his time on non-exempt work, he could still be categorized as an executive under § 541.103. The second factor to consider is the relative importance of his managerial duties as compared with other types of non-exempt duties. The plaintiff's responsibilities for ordering warehouse merchandise, determining the sequence in which orders were to be filled and delivered, making recommendations for hiring and salary decisions, and making recommendations concerning work force size go to the very heart of the successful operation of the warehouse. These responsibilities were very important in comparison to the non-exempt duties performed by the plaintiff.

The frequency with which the plaintiff exercised his discretionary power is a third factor to consider. Much of his discretionary power involved the day-to-day operation of the warehouse and was exercised daily. This included the scheduling of truck routes, delivery times and employee's working hours and the ordering of merchandise. Other responsibilities, such as hiring, firing and salary recommendations, were by their nature not made on a daily basis. But when such issues arose the plaintiff consistently exercised his discretionary power in the form of recommended action.

A fourth factor is the plaintiff's relative freedom from supervision. The fact that the branch manager of the defendant company was seldom present in the warehouse strongly suggests that the plaintiff was often unsupervised.

Finally, the Court should consider the relationship between the plaintiff's salary and the wages paid other employees for non-exempt work. As the record shows, the plaintiff's salary was approximately $15,000.00, while that of the next highest paid employee in the warehouse was $4.62 per hour, or approximately $9,609.60 annually, based on a 40 hour work week. Comparatively, the salary of the branch manager was approximately between $16,000.00 and $17,000.00 annually.

The credible evidence shows that the plaintiff was employed by the defendant company to oversee and supervise its day-to-day warehouse operations. While undisputedly, the plaintiff often worked side by side with others in the warehouse perform-

ing the same work, his additional duties and responsibilities clearly indicate that his primary duty was management and he was thus employed in a bona fide executive capacity pursuant to 29 U.S.C. § 213(a)(1). He is therefore, exempt from receiving overtime compensation under 29 U.S.C. § 207(a).

For the above reasons, and for good cause appearing, the Court finds the issues in favor of the defendant and against plaintiff. Accordingly, it is

ORDERED that judgment in the above-styled cause of action be entered in favor of the defendant and against the plaintiff.