Randall L. GUTHRIE, Thomas D. Chambers, Boyd R. Guthrie, Albien J. Kos, Melvin C. Bumbarger, Delvin Cole, Ray R. Alvetro and Warren C. Hamilton, on behalf of themselves and all other employees of Lady Jane Collieries, Inc., similarly situated, Appellants,

v.

LADY JANE COLLIERIES, INC., a Pennsylvania Corporation, Appellees.

Randall L. GUTHRIE, Thomas D. Chambers, Boyd R. Guthrie, Albien J. Kos, Melvin C. Bumbarger, Delvin Cole, Ray R. Alvetro and Warren C. Hamilton, on behalf of themselves and all other employees of Lady Jane Collieries, Inc., similarly situated, Appellees,

v.

LADY JANE COLLIERIES, INC., a Pennsylvania Corporation, Appellant.

Nos. 83–5181, 83–5200.

United States Court of Appeals, Third Circuit.

Argued Oct. 24, 1983.

Decided Dec. 16, 1983.

As Amended March 1, 1984.

Lucinda A. Bush (argued), Hart & Bush, Washington, Pa., for appellant in No. 83–5181 and appellees in No. 83–5200.

Thomas A. Smock (argued), David J. Laurent, Corcoran, Hardesty, Ewart, Whyte, Polito, P.C., Pittsburgh, Pa., for appellees in No. 83–5181 and appellant in No. 83–5200; Joseph T. Kosek, Jr., Ebensburg, Pa., of counsel.

Before GIBBONS, GARTH and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

Under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a) (1976), employees are entitled to overtime compensation, at the rate of one and one-half times the regular rate, for time worked in excess of forty hours per week. Exempt from this provision is any "employee employed in a bona fide executive, administrative, or professional capacity." *Id.* Section 213(a). "Executive capacity" is further defined in regulations promulgated by the Department of Labor. 29 C.F.R. §§ 541.1, 541.-101–541.119 (1983).

This appeal primarily requires that we determine whether certain employees were "executives," and thus exempt, within the meaning of the relevant statutes and regulations. If so, they were not entitled to the overtime pay they claimed. If not, overtime compensation and possibly liquidated damages should have been paid to them. The district court resolved the issue of who was, and who was not, exempt on motions for summary judgment. We affirm in part and reverse in part.

## I.

Lady Jane Collieries, Inc. (Lady Jane), operates a coal mine in Penfield, Pennsylvania. Among its employees at the times in question were Randall Guthrie, Thomas Chambers, Boyd Guthrie, Albien Kos, Melvin Bumbarger, Delvin Cole, Ray Alvetro, and Warren Hamilton. All eight employees filed suit against Lady Jane, claiming that they had been unlawfully denied overtime pay. Lady Jane contended that all were exempt "executives."

On cross-motions for summary judgment, the district court held R. Guthrie, B. Guthrie, Kos, Bumbarger, Cole, and Hamilton to be exempt, and granted Lady Jane's motion. The district court found Alvetro and Chambers to be nonexempt, and granted their motions. The court refused to grant liquidated damages to Alvetro and Chambers under 29 U.S.C. §§ 216(b) and 260 (1976). *Guthrie v. Lady Jane Collieries, Inc.,* 556 F.Supp. 164 (W.D.Pa.1983).

The employees filed timely appeals to this court: Alvetro and Chambers appeal from the denial of liquidated damages, and the other employees appeal from the grant of summary judgment in Lady Jane's favor. Lady Jane appeals from the grant of summary judgment as to Alvetro, but does not appeal from the judgment in favor of Chambers.

## II.

### A.

### R. Guthrie, B. Guthrie, Kos, Bumbarger, and Cole

Summary judgment may be granted if the pleadings and other evidence show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). On review of a grant of summary judgment we must apply the same test, viewing the evidence most favorably to the party opposing the motion. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

Exemptions from the FLSA are to be narrowly construed against the employer. *Mitchell v. Kentucky Finance Co.,* 359 U.S. 290, 295, 79 S.Ct. 756, 759, 3 L.Ed.2d 815 (1959). The burden of proof is on the employer to establish an exemption. *See Idaho Sheet Metal Works, Inc. v. Wirtz,* 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966). The district court held (and the parties do not dispute) that the two Guthries, Kos, Bumbarger, and Cole all worked as section foremen in the mine, and all performed the same duties. *See* 556 F.Supp. at 166. Because the section foremen earned more than

$250 per week, the regulation applicable to determine their status as executives is the so-called "short test" regulation:

> [A]n employee who is compensated on a salary basis at a rate of not less than $250 per week ... and whose primary duty consists of the management of the enterprise ... or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

29 C.F.R. § 541.1(f) (proviso) (1983). Both parties concede that all five employees satisfy the "customary and regular direction" requirement of the test. The dispute between Lady Jane and these employees centers on whether the employees meet the "primary duty of management" requirement.

### B.

"Primary duty" within the meaning of the regulation is further defined in 29 C.F.R. § 541.103:

> A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees

for the kind of nonexempt work performed by the supervisor.

It is undisputed that the section foremen, as a group, spent no more than an average of 44% of their time performing work that was concededly managerial in character. Some of the five, however, spent more time on managerial tasks, and some, less. *See* 556 F.Supp. at 167. We need not decide whether, as is urged by the five foremen, employees performing the same duties may be treated as a class in determining the application of this regulation, because we hold that all five employees satisfied the "short test." The district court also reached that same conclusion. In doing so, the district court stated:

> [W]hile it is a useful rule of thumb in ordinary cases to say that management is the primary duty of an employee spending more than half his time in performing management functions, nevertheless time spent is not the sole test, and if the circumstances demonstrate the existence of bona fide executive authority and functions, the employee may properly be treated as exempt even if more than 50% of his time is devoted to non-exempt activities.
>
> \* \* \* \* \* \*
>
> The 44% average seems clearly to be substantial enough to satisfy the 50% rule of thumb, in the light of what has been said before regarding the non-crucial character of that rule. In any event Bumbarger with 57% and Cole with 51.9% qualify. R.L. Guthrie's percentage was 47.22%, Boyd R. Guthrie's 31.65%, Kos's 33%. These are enough to establish bona fide substantial performance of management functions. The importance of such functions suffices to make them the employees' "primary duty." The section foremen are "in charge" of operation of their section of the mine during their shift. They also regularly direct the work of two or more other employees. The five section foremen qualify for exemption.

556 F.Supp. at 166–67.

 While our reasoning is not precisely the same as the district court's, we have

reached the same result.[1] We read the district court's statement as a holding, with which we agree, that the record reveals a sufficient presence of "pertinent factors" (other than time spent in managerial duties) to demonstrate that each foreman had management as his primary duty.[2]

Preliminarily, we reject the implication in the district court's opinion that by merely holding that the foremen were "in charge" of their respective sections, without analyzing the underlying criteria of the relevant regulation, the district court could properly conclude that the regulation's requirement that the foremen's primary duty be management had been satisfied. The regulation clearly directs the court's attention to several factors, which must be considered before a determination of "primary duty of management" may be made. Thus the regulation requires more than a conclusory leap from a holding of "in charge" to a conclusion that a "primary duty of management" has been established. *See Donovan v. Burger King Corp.*, 672 F.2d 221, 225–26 (1st Cir.1982). Since there is no dispute as to the foremen's duties, we examine the undisputed facts in light of the regulation.

In accordance with 29 C.F.R. § 541.-103, one of the factors to be considered is the importance of managerial duties performed, as compared with other duties. The record discloses that a foreman's duties included overseeing the work done by the crew, assuring that the work complied with the plans, recognizing dangerous conditions, maintaining proper ventilation, controlling the workforce, giving out assignments to the crew, checking the equipment, training the crew and deciding whether a new crew member was trained sufficiently to begin work, and keeping records. (App. passim).

One court has evaluated the question of relative importance of duties in terms of whether the management activities are critical to the successful operation of the enter-

prise. *Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (2d Cir.1982). Lady Jane has stressed the importance of safety functions, contending that in a mine, safety cannot be overemphasized. The foremen, in contending for nonexecutive (nonexempt) status, argue that their primary responsibility is coal production, and the safety function is no more a concomitant of that activity. They claim in effect that because safety considerations are an integral part of mining coal and thus are inextricably entwined with the act of mining, no undue "executive" weight should be attributed to any responsibility the foremen may have for safety conditions and supervision. The record, however, does not bear out this characterization of the foremen's responsibilities. The record discloses that, contrary to the foremen's disclaimers, the safety and supervisory functions of the foremen's positions are uniquely essential to the operation of the mine, and to the extent that these functions are carried out simultaneously with the performance of nonexempt work, we are not persuaded that they must be regarded as nonmanagerial. *See Burger King* (2d Cir.), 675 F.2d at 521.

Another criterion to which the regulation refers is the frequency of exercise of discretionary powers. The foremen have no power to hire, fire, or discipline; they rarely exercise their power to recommend discipline (78a, 81a). Lady Jane argues, however, that the foremen were "in charge," thus they must have exercised discretion, and that they assigned tasks to the crew. (App. passim). Lady Jane also points out that authority to hire or fire is not a prerequisite to finding discretion, observing that the two are separate factors in the regulation's "long test" (29 C.F.R. § 541.1, see *infra* note 5) of "executive" status. *See also Lyles v. K-Mart Corp.*, 519 F.Supp. 756, 762 (M.D.Fla.1981).

---

1. An appellate court may affirm a result reached by the district court on different reasons, as long as the record supports the judgment. *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937); *Behring Int'l, Inc. v. Imperial Iranian Air Force*, 699 F.2d 657, 666 n. 7 (3d Cir.1983).

2. In so doing, we reject the reading urged upon us by the employees that the district court found only that 44% was sufficiently close to 50% to demonstrate that all five had management as their primary duty.

█ Discretion in this context, however, must be more than that which normally characterizes direction of work of others. It too must be critical to the success of the enterprise. *Cf. Burger King* (2d Cir.)· at 521. *Rothman v. Publicker Indus.,* 201 F.2d 618, 680 (3d Cir.1953). The record here reveals only meager evidence of the foremen's frequent exercise of discretion. The foremen clearly use their discretion to assign work to their crews (*e.g.,* App. 23a, 44a). Their discretion is also exercised in deciding whether a new miner is ready to work. Beyond this, however, their input into planning seems at best minimal (33a–34a), although they plan day-by-day work in their sections (54a), are responsible for safety, and can make their own decisions when conditions become unsafe (*see* 14a). Thus the evidence as to this factor would argue against exempt status.

Still another factor is the relative freedom of the exempt executives from supervision. Here the evidence strongly supports a holding that this factor has been satisfied. While there are higher authorities than the section foremen at the mine, the foremen are essentially on their own when working underground, as they do for most of the day (App. 41a); moreover, about half the time, they are the persons on the property in highest authority (App. 40a). It is in this context that the notion expressed by the district court that the foremen were "in charge," has the most weight. *See Burger King* (2d Cir.), *supra,* 675 F.2d at 522:

> The record also shows that for the great bulk of their working time, Assistant Managers are solely in charge of their restaurants and are the "boss" in title and in fact. We take that fact to satisfy criteria (4), the relative lack of supervision. See *Walling v. General Industries Co.,* 330 U.S. [545] at 549–550, 67 S.Ct. [883] at 884–885 [91 L.Ed. 1088 (1947)]; *Phillips v. Federal Cartridge Corp.,* 69 F.Supp. 522 (D.Minn.1947); *Kelly v. Adroit, Inc.,* 480 F.Supp. 392 (E.D.Tenn.

1979). That the Restaurant Manager is available by phone does not detract in any substantial way from this conclusion. Being available for advice is in no sense the exercise of supervision.

Finally, the regulation requires an analysis of the relationship between the foremen's salary and the wages paid to the crew members. The foremen's salary here breaks down to $129 per nine-hour day. The crew members receive $106.50 per eight-hour day. If the crew members worked nine hours, their daily wage would come to $126.47 (with overtime). There are, however, some benefits that the foremen receive that the hourly workers do not. Foremen, even though they are required to report to the mine, are paid even when the mine is not functioning and the miners are not working (30a, 41a, 170a). In sum, this evidence, while inclined in favor of exempt status, is not compelling.

The facts in this case are similar to *McReynolds v. Pocahontas Corp.,* 192 F.2d 301, 303 (4th Cir.1951), in which mine foremen were held exempt. In *McReynolds,* section foremen were "in complete control" of the crews, were under no direct supervisor (and were visited by the general foreman once or twice a week); they assigned miners to particular work, directed their efforts, and kept records. In addition, the court found "discretion" in their responsibility for safety of the men and equipment, in that it was for them to decide if it was safe to work. The foremen were recognized by the union as management.[3] *See also Walling v. General Indus. Co.,* 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947) (foremen's duties were continuous supervision of the trained employees, maintaining constant observation of all machinery, making inspections and repairs, and oiling and cleaning engines; evidence held sufficient to establish exemption).

Our review in a summary judgment context, as we have observed, does not differ from the standard employed by the district

---

**3.** We do not attach importance to the *McReynolds's* union designation of the foremen as management. The controlling issue here is not the question of what constitutes an exempt supervisor (foreman) under the National Labor

Relations Act, but rather what were the extent and nature of the duties performed by the foremen within the context of the FLSA and the tests prescribed by the regulations promulgated pursuant to that Act.

court. Thus we have independently reviewed the record, evaluating the evidence and the factors supporting exempt status (relative importance of duties, and freedom from supervision) as well as the evidence and factors which arguably would not support exempt status (exercise of discretion, and salary differential). On balance, after weighing the evidence, we are satisfied that the evidence when applied to the various factors that the regulation sets out, leads to a conclusion that the foremen were indeed primarily engaged in management functions during their respective shifts, and that by virtue of their overall responsibilities—which we have previously discussed—accordingly meet the qualifications for exempt status.

## C.

### Hamilton

Lady Jane argues that Hamilton, who at one time had been a maintenance foreman and electrician, was exempt under the "short test" (29 C.F.R. § 541.1(f) (proviso) (1983)) after he had been promoted to assistant mine foreman in June 1982. Lady Jane points to evidence establishing that both before and after June 19, 1982, Hamilton was the senior mine foreman at the mine during the third shift and was responsible for the mine during that shift. According to the affidavit of Clifford Ireland, the mine foreman, Hamilton was in charge of a maintenance crew that included two maintenance engineers, two supplymen, a mechanic, and a mechanic's helper. (App. 173, 174). "Hamilton was in charge of, and responsible for, the work of the previously mentioned crew. He assigned them their tasks and directed their work." (App. 173).

Hamilton's own April 1982 affidavit states that he has been a general assistant mine foreman since January 1980 (App. 162–63). On the other hand, Andrew Firment, the mine supervisor, testified that prior to the date in June 1982 that Hamilton had been named general assistant mine foreman, he was a maintenance foreman, and as such primarily was "in charge of the mechanics, electricians, anything to do with electrical and mechanical or hydraulic." (App. 106). Firment characterized Hamilton as an "electrician and mechanic" during that period.

The district court held that Hamilton was exempt, 556 F.Supp. at 167, apparently relying on Firment's deposition that described Hamilton as being "totally responsible for the health and safety of the men under his command" as a general assistant mine foreman; and that "he commands the whole operation inside and out." (App. 107). The majority of this court agrees with the district court's analysis.[4]

First, we hold that Hamilton is to be evaluated under the short test, even though there is an exception to the short test for "mechanics . . . and other craftsmen," 29 C.F.R. § 541.119(c) (1983) which would require analysis under the "long test" of *id.* § 541.1.[5] The evidence can be read, how-

---

**4.** Judge GARTH, the author of this opinion, disagrees with the conclusion reached by Judges Gibbons and Higginbotham. In Judge Garth's view the testimony as to what Hamilton's duties were, and when they were performed, is sufficiently disputed in the affidavits that comprise this record that in his opinion summary judgment could not be granted. Judge Garth believes that the contested issues of fact should have been tried, that the "mechanic" exception to the "short test," 29 C.F.R. § 541.119(c), applied to Hamilton, and that if Hamilton's functions were to be measured under the "long test" he would not be held exempt during the period in question (as, indeed, Lady Jane chooses not to dispute, see Br. 29–36).

**5.** 29 C.F.R. § 541.1 states the "long test" as follows:

The term "employee employed in a bona fide executive * * * capacity" in section 13(a)(1) of the act shall mean any employee:

 (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

 (b) Who customarily and regularly directs the work of two or more other employees therein; and

 (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

 (d) Who customarily and regularly exercises discretionary powers; and

 (e) Who does not devote more than 20 percent, or, in the case of an employee of a retail

ever, as showing that Hamilton was more an instructor than a mechanic at the time he performed "mechanic's" duties. In addition, his position as assistant mine foreman did not depend upon his status as mechanic/electrician.

■ Second, we conclude that when evaluated under the "short test," the undisputed facts establish that Hamilton is exempt. We are satisfied that Lady Jane met its initial burden to show that the various affidavits and depositions can be construed as consistent with each other, since Firment appears to have been referring to Hamilton's official title, rather than his actual duties. If read in that manner, the evidence would establish that Hamilton served as acting assistant mine foreman before and after June 1982. Because the record discloses that Hamilton spent 43% of his time on managerial duties, the regulatory criteria must be examined. The evidence can be deemed to satisfy the four criteria of the "short test": Firment's deposition describes Hamilton as being "totally responsible for the health and safety of the men under his command, he commands the whole operation inside and out" (App. 110a), and Hamilton stated that he assigned tasks to the crew (45–46a). Hamilton's "total responsibility" and "command" duties were of substantial importance, so the factor of "relative importance" is satisfied. The frequency of exercise of discretion (assigning the crew's tasks) is present, although not compelling. That Hamilton was "totally" responsible can be taken to mean that Hamilton was relatively free from supervision. Hamilton's salary, as revealed in his deposition, is about $2,840 per month, or $130 per day, which is comparable to that of the section foremen, see *supra* p. 1146. Again, Hamilton received his salary even when the crew were not working, and the mine was shut down. (Depo. 24)

Thus, under the "short test" the record suffices to establish that Hamilton's primary duty was management. The second prong of the "short test," customary direction of two or more employees, is established by the undisputed fact that he was in command of the entire mine during third shift. We therefore agree with and affirm the district court's holding that Hamilton was an exempt "executive."

### D.

#### *Alvetro*

■ The district court held Alvetro was not exempt: "Plaintiff Alvetro, though holding the title of general assistant mine foreman, performed manual labor most of the time. He exercised supervisory functions only in the absence of the mine foreman. He does not qualify as exempt." 556 F.Supp. at 167.

We find there are material disputes of fact as to Alvetro's duties from May 1981 to June 1982. The affidavit of Clifford Ireland, the mine foreman, states that Alvetro was general assistant mine foreman until June 1982, and that during the time that Ray R. Alvetro worked second shift, from May 1981 until June 1, 1982, he was in charge of the whole operation of the mine because the mine foreman and superintendent did not work second shift. But Alvetro's deposition states that he was never in charge of the mine:

Q. That would be part of your duties, then, as you see it?

A. If I was solely there in charge, that is correct.

Q. Does that happen very often?

A. I have never seen it happen.

Q. You have never been solely in charge of the mine? I am not talking about the discipline.

A. Oh, just for the one month when Bill Holeman got discharged.

Q. Before Hanslovan came.

A. Before Hanslovan came and I promised that I would just take it over on a

---

or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a)

through (d) of this section: *Provided,* [these provisions not applicable here] . . .; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week . . . .

temporary basis until we got this mine put back on its feet.

Q. Do you assign individuals at any time work to do?

A. Only when the mine foreman is absent.

Q. And then you do?

A. Then I do.

Q. Okay.

A. And it becomes my duty.

Q. How often is the mine foreman not there when you are there?

A. Very seldom.

Now, only like during vacation here, now he'll take three weeks—I mean, three days or two days. Once he gets his vacation filled in, he is generally there full time.

(Alvetro Deposition pp. 13–15). In addition, Alvetro stated that he worked first shift (see depo. 3). Thus the evidence presents at least two disputes of fact: whether Alvetro worked first or second shift, and whether he was ever in charge of the mine during second shift. These disputes are material because Alvetro must be evaluated under the "short test," and because he performed manual labor (crew work) more than 50% of the time (App. 160) so that the "short test" criteria discussed earlier in this opinion are applicable. The facts in dispute go to the proof of the factors of relative importance of duties, discretionary powers and freedom from supervision. Thus Alvetro's status could not have been determined on a motion for summary judgment. We therefore disagree with and thus reverse the district court's order holding that Alvetro was not exempt.

Furthermore, on the basis of its holding that Alvetro was not exempt, the district court was then obliged to consider whether

Alvetro was entitled to liquidated damages. Liquidated damages for violation of the overtime provisions of the FLSA are provided for in 29 U.S.C. 216(b) (Supp.1978):

(b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

Under 29 U.S.C. § 260,[6] the court has discretion to award no, or less, liquidated damages, but only if the employer satisfies his burden of proof that he acted in good faith and with reasonable grounds for believing he was not violating the Act. *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir.1982). The district court must make findings as a "prerequisite to the invocation of its discretion," *id.*, that the employer acted in good faith and with reasonable grounds. On the record before us we cannot determine whether Lady Jane's burden of proving good faith and reasonableness was satisfied. There is simply no record evidence as to the factors contributing to Lady Jane's decision not to pay overtime.[7]

Here, the district court stated merely:

Although 29 U.S.C. 216(b) provides for doubling the damages, 29 U.S.C. 260 authorizes the Court in its discretion to award no additional liquidated damages if satisfied that the employer acted in good faith and upon reasonable grounds. *Rau v. Darling's Drug Store, Inc.*, 388 F.Supp. 877, 886–87 (W.D.Pa.1975). Being satisfied that these conditions are fulfilled, and that the case at bar presented close questions, we praetermit liquidated

---

6. In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended,

the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount thereof specified in section 216 of this title.

7. Lady Jane points to the fact that the wage paid to Alvetro exceeded the minimum wage. On the facts of this case, where the hourly wage rate was so much higher than the minimum wage, we question the relevance of this fact.

damages, and also deny punitive damages.

556 F.Supp. at 167. These remarks, which are conclusory in nature, are insufficient under the *Brunner* requirement that the district court make specific findings respecting the employer's burden of proof, good faith, and reasonableness in believing he was not violating the FLSA. Thus, on remand this issue, as well, must be reconsidered and specific findings made. Because a remand for trial is required in any event, the parties should be given an opportunity to develop the record with respect to liquidated damages.[8]

### E.

#### *Chambers*

While Lady Jane did not appeal the district court's determination that Chambers was not exempt, 556 F.Supp. at 167, Chambers did appeal from the holding of the district court that no liquidated damages were to be charged against Lady Jane. 556 F.Supp. at 167. As we have previously indicated with respect to Alvetro, because Alvetro's claim must be tried and a record developed sufficient for the district court to make the necessary findings of fact, there is little reason for the district court not to consider Chambers's liquidated damages claim as well. The district court should therefore also make the necessary findings of fact complying with the requirements of *Brunner,* as they pertain to Chambers. Under these circumstances we will also remand with respect to Chambers's claim to liquidated damages so it may be heard together with that portion of Alvetro's claim seeking liquidated damages.

### III.

We will affirm so much of the district court's order dated February 8, 1983 as held that R. Guthrie, B. Guthrie, Kos, Bumbarger, Cole, and Hamilton are exempt and

therefore not entitled to the overtime pay which they have claimed.

As to Alvetro and Chambers, we will reverse so much of the district court's order as held that Alvetro was nonexempt, and so much of the order as denied liquidated damages to Alvetro and Chambers. We will therefore remand to the district court for further proceedings consistent with this opinion, limited, however, to the claims of Alvetro and Chambers.

Each party will bear its own costs.

---

8. We recognize that after trial the district court may once again hold that Alvetro was not exempt. However, such a holding would necessarily be predicated on the district court's findings of fact, findings that cannot now be made because of the state of the record. On the other hand, if the district court after trial holds that Alvetro is exempt, then of course no issue of liquidated damages would be presented. We intimate no view with respect to either issue, leaving those determinations to the district court.