676 A.2d 627

GLORIA DIMIRO, PLAINTIFF, v. TOWNSHIP
OF MONTCLAIR, DEFENDANT.

Superior Court of New Jersey
Law Division Essex County

Decided February 16, 1996.

*Richard Seltzer,* for plaintiff.

*Stephen E. Klausner,* for defendant.

VAZQUEZ, J.S.C.

This matter comes before the court on a motion for summary judgment by defendant Township of Montclair. Defendant requests dismissal of plaintiff's complaint. The complaint seeks recovery of unpaid overtime compensation, pursuant to the provisions of the Fair Labor Standards Act, 29 *U.S.C.A* § 201.

Having carefully considered the entire record before it, the court finds that plaintiff was employed by defendant in a bona fide executive capacity and that pursuant to 29 *U.S.C.A.* § 213(a) she is exempt from receiving overtime compensation under the provisions of 29 *U.S.C.A.* § 207. Accordingly, the motion of defendant is granted.

This matter was brought before the court upon a stipulation of facts in the record. This record included plaintiff's deposition and interrogatory answers, the 1990 Montclair Municipality Management Salary Ordinance, and minutes from selected municipality council meetings. Upon review of the record agreed to by both parties, the following pertinent facts emerge.

Plaintiff, Gloria Dimiro, began working for defendant, Township of Montclair, in 1968. In 1972, plaintiff became the full time court clerk for the municipality. Plaintiff held this position until her retirement in March 1994. During the course of her employment, plaintiff's salary increased from approximately $23,000.00 per year to approximately $55,000.00 per year and her title changed from Court Clerk to Court Administrator. Neither the changes in salary nor the change in title effectively changed the inherent nature of plaintiff's employment.

It is also undisputed that plaintiff's work duties included: handling the criminal complaints, setting up the court calendar, acting as custodian of the records of the municipal court, assisting the judge while court was in session, preparing the budget applicable to her department, and planning the work of other employees in the office. Plaintiff was also required to attend annual budget meetings with the judge and other department heads.

During plaintiff's tenure, the staff she supervised increased from three to six workers. While plaintiff did not have the authority to hire or fire anyone in the office, she held the authority to recommend the hiring of additional employees and was present during the interview of all new hires. Plaintiff's supervisory responsibilities included apportioning and assigning work; scheduling the appropriate times for vacations and time off work; and dealing with the personal problems of the employees when they affect work environment.

Besides the recurring responsibilities described above, on one occasion, plaintiff recommended the firing of an employee she had disciplined. Based on plaintiff's recommendation, the municipal judge eventually terminated this employee.

Plaintiff also participated in the selection of the computer system and the automation of the municipal court in the early 1980's. Prior to 1990, plaintiff's duties included the signing of arrest warrants. The legislature abridged this power by statute.

The duties and responsibilities described above, as well as the other functions of plaintiff's job, were all seemingly performed within the confines of a regular forty hour work week. However, this changed in 1977, when the Montclair instituted a night court. In her deposition, plaintiff testified that the night court heard cases one night a week for about forty weeks during the year. She also testified that her increased duties relating to the night court resulted in her working more than forty hours per week. In total, plaintiff's complaint seeks about 1200 hours of unpaid overtime compensation accrued during the course of her employment with the township's night court. To support her demand for

overtime compensation, plaintiff points to the Fair Labor Standards Act (F.L.S.A.).

The portion of the Fair Labor Standards Act that provides for overtime compensation states:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one half times the regular rate at which he is employed.

> [29 *U.S.C.A.* § 207(a)(1).]

Both parties agree to the applicability of the F.L.S.A. to the plaintiff's employment with defendant. The dispute revolves around whether the Act's overtime-requirement exception applies to plaintiff. This exception provides:

> (a) The provisions of ... section 207 of this title shall not apply with respect to:
> (1) any employee employed in a bona fide executive, administrative, or professional capacity....

> [29 *U.S.C.A.* § 213(a)(1).]

■ This court has found no New Jersey case law interpreting the portions of the F.L.S.A. applicable to the instant case. However, a wealth of Federal decisions provide guidance for interpreting the relevant sections. It is well established that the F.L.S.A. exemption for bona fide executives, administrators and professionals is to be narrowly construed against the employer. *Mitchell v. Kentucky Finance Co.*, 359 *U.S.* 290, 295, 79 *S.Ct.* 756, 759, 3 *L.Ed.*2d 815 (1959). Like other employers invoking this exemption, the Township of Montclair carries the burden of proving the section's applicability to plaintiff. *See Idaho Sheet Metal v. Wirtz*, 383 *U.S.* 190, 86 *S.Ct.* 737, 15 *L.Ed.*2d 694 (1966).

As suggested in the case law cited, a court properly turns to the Code of Federal Regulations (C.F.R.) to determine whether plaintiff falls within the exception for bona fide executive, administrator or professional. The C.F.R. provides various tests depending on whether the employee is classified as an executive, employee or professional. As neither party argues that the plaintiff is properly

characterized as a professional or an administrator, this case is limited to the statutory exemption for "executives".

■ The phrase "employee employed in a bona fide executive ... capacity," is defined at 29 *C.F.R.* § 541.1. This section enumerates both a "long test" and a "short test" to determine the capacity of an employee for the purpose of the overtime exception. Because plaintiff earned more than a threshold amount of money per week, the short test is applicable to the instant case. The short test provides, that an employee shall be deemed to meet the requirements of a bona fide executive, when that employee:

> is compensated for his services at a rate of not less than ... $250.00 per week ... and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein. . . .

29 *C.F.R.* § 541.1. As seen above, plaintiff must satisfy two requirements to fall under the short test. First, the employee's primary duty must be management and second, he must regularly direct the work of at least two other employees. *Donovan v. Burger King Corp,* 672 *F.*2d 221, 223 (1st. Cir.1982).

The record clearly shows that plaintiff directed the work of three other employees at the inception of her employment as the full time court clerk. Equally clear is the gradual increase in the number of workers plaintiff supervised as the volume of office work increased.[1] When plaintiff resigned, the number of people she supervised had increased to six.

Plaintiff argues that since the other clerical employees often handled the duties she performed, the second prong of the test cannot be demonstrated. This argument lacks merit. The fact that other employees often perform the same duties as a supervisor neither diminishes the delegatory authority of that supervisor, nor minimizes the importance of additional supervisory duties. Although a certain overlap in the numerous employment duties

---

[1] In her deposition, plaintiff stated that from 1975 to 1994 the amount of civil fines processed increased from $75,000 to $1,000,000.

existed, the court finds plaintiff customarily and regularly directed the work of two or more employees, and the second prong of the short test is accordingly satisfied. *See Snipes v. Paramount Liquor Co. of Missouri,* 544 *F.Supp.* 563, 568 (W.D.Mo.1982).

*Snipes v. Paramount Liquor Co. of Missouri,* 544 *F.Supp.* 563, 568 (W.D.Mo.1982) is the case most factual by relevant to plaintiff's situation. The plaintiff in *Snipes* worked in the warehouse of the defendant company. *Id.* at 564–565. Like Ms. Dimiro, Mr. Snipes claimed that he was owed compensation for hours worked in excess of forty per week. Also, like Ms. Dimiro, Mr. Snipes testified that the duties of his position were the same duties and responsibilities delegated to the other warehouse employees. *Id.* at 565. The court held that Mr. Snipes was a bona fide executive within the meaning of 29 *U.S.C.A.* § 213(a)(1) and therefore was exempt from the overtime compensation pursuant to 29 *U.S.C.A.* § 207(a). *Snipes, supra,* 544 *F.Supp.* at 569.

■ The only remaining disputed issue in the instant case concerns the first prong of the short test, namely, whether plaintiff's primary duty was management. Both the terms "management" and "primary duty" are further defined in the C.F.R. Under the heading "management", the regulation lists certain work considered within the scope of the exemption when performed by the employee or by others under the employee's supervision. Included in this group is interviewing; directing work of employees; handling the complaints and grievances of employees; disciplining employees when necessary; apportioning work; and determining the type of materials, supplies or machinery to be used. *See* 29 *C.F.R.* § 541.102.

All of the duties cited fall within the scope of plaintiff's employment, as described above and in plaintiff's deposition. Even plaintiff fails to dispute that her employment included participation in management duties. As there is no evidence to the contrary, it can be conclusively stated that plaintiff's position as court clerk/court administrator required her to engage in management activities, for the purposes of the statute.

More significant is the last question for consideration: whether the management function of plaintiff's job was her primary duty. Again, the court properly turns to the C.F.R., where the term "primary duty" is defined. *See* 29 *C.F.R.* § 541.103. While this section advises that primary duty must be based on all the facts in a particular case, the regulation also provides guidelines for making the determination. Considerations must include the time spent in management duty; the importance of management duties as compared with other types of duties; the frequency with which the employee exercises discretionary powers; the employee's freedom from supervision; and the employee's salary compared to the wages of other workers. 29 *C.F.R.* § 541.103.

While the regulation points to 50% as the required amount of time spent in management for it to be considered the employees primary duty, courts have interpreted the percentage flexibly. *Guthrie v. Lady Jane Collieries*, 722 *F*.2d 1141, 1144 (3rd. Cir. 1983). (short test satisfied where employees spent no more than 44% of their time in management duties.). Plaintiff does not refute the claim that management comprised 100% of her job, but rather tries to characterize her job duties as non-management. It is clear that plaintiff's management duties, including handling the criminal complaints, setting up the court calendar, acting as custodian of the records of the Municipal Court, assisting the judge while court was in session, preparing the budget applicable to her department, directing the work of three to six employees, planning the work of other employees in the office, attending annual budget meetings, recommending the hiring of additional employees, interviewing all new hires, apportioning and assigning work in the office, scheduling the appropriate times for employee vacations and time off work, dealing with the personal problems of the employees when they affected work environment, recommending the firing of an employee she had disciplined, participating in the selection of the computer system and the automation of the municipal court, and prior to 1990, signing arrest warrants, comprised more then 50% of her employment.

In response to the other considerations of *C.F.R.* § 541.103, plaintiff neither fails to minimize the importance of her management duties, as compared with any other functions of her employment, nor claims she lacked independence in performing her job.

While salaries of the supervised employees were not present in the provided record, it is clear that plaintiff's salary was more in line with other management and supervisory personnel.[2] As a result of her earnings, and her position as supervisor, plaintiff was precluded from participating in the union.

In answer to *C.F.R.* § 541.103, plaintiff merely reargues her position that the duties she delegated to the other court clerks in the office could be done by anyone, and claims that she did not have a large amount of discretion. As stated above, the overlap of plaintiff's duties with other workers does not persuade the court that she lacked managerial controls. While undisputedly plaintiff often worked side by side with others in the office, performing the same work, her additional duties and responsibilities clearly indicate that her primary duty was management.

Plaintiff also asserts that her employment lacked discretion. Discretionary powers include activities performed in the day to day operation of the office. Plaintiff's continual delegation of work to the other clerks exemplifies her daily exercise of discretionary authority. However, discretion in the context of the

---

[2] Plaintiff's salary was established by the Municipality's Management Salary Ordinance. This ordinance set the wage of certain offices, positions and employments of the municipality. In 1990, the salaries ranged from $78,000 (township manager) to $4.82 per hour (part time office help). The plaintiff earned $43,775.00, in 1990, the maximum amount available to a court clerk ($36,403 to $43,775). Other municipal positions earning in the same range as plaintiff, included Engineering Supervisor, Uniform Construction Code Official, Superintendent of Park Services, and Director of Information Services. Positions included in the salary range below Court Clerk included Director of Nursing, Health Administrator, Personnel Officer, Collector of Taxes and Water Rents, Shop Supervisor and Director of Welfare ($33,238 to $40,015). The Municipal Judge earned $23,191 in 1990.

regulation requires more then direction of work for others. *Guthrie v. Lady Jane Collieries*, 722 *F*.2d 1141, 1146 (3rd. Cir.1983).

To find discretion, courts have looked for responsibilities, such as disciplining and hiring or firing other employees, which by their nature are not exerted on a daily basis. *See Guthrie, supra,* 722 *F*.2d at 1145–1146, *Snipes v. Paramount Liquor Co. of Missouri,* 544 *F.Supp.* 563, 568 (W.D.Mo.1982). While plaintiff lacked the ability to hire and fire, she exercised her authority to discipline, and once recommended the firing of an employee. Such authority has not been made a prerequisite for discretion, but its absence has dissuaded courts from finding discretion among employees. *Guthrie v. Lady Jane Collieries*, 722 *F*.2d 1141, 1147 (3rd. Cir. 1983). Further examples of plaintiff's non-daily discretionary powers include her influence in the automation and computerization of the office, her coordination and organization of the municipality's mandatory employee training program, and her ability to sign arrest warrants [3]. In sum, the extent of discretionary powers exhibited by plaintiff tips the scales in favor of her being characterized as management.

Plaintiff's discretionary authority clearly meets the requirements of the regulation. However, all factors of § 541.103 need not be present for an employee to possess exempt status. *Guthrie, supra,* 722 *F*.2d at 1147 (exempt status found where evidence failed to indicate exercise of discretion or salary differential).

The court finds that plaintiff was employed in a bona fide executive capacity pursuant to 29 *U.S.C.A.* § 213(a)(1). Plaintiff is therefore exempt from receiving overtime compensation under 29 *U.S.C.A.* § 207(a).

Summary judgment is designed to provide a prompt, business-like and inexpensive method of disposing of any cause which a discriminating search of the merits clearly is shown not to present any issue of material fact requiring disposition at trial. *Judson v.*

---

[3] As stated above, plaintiff's power to sign warrants was abrogated by legislative statute in 1990.

*Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 74, 110 *A.*2d 24 (1954). Recent decisions have emphasized, "that a court should deny a summary judgment motion *only* where the party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged'." *Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 529, 666 *A.*2d 146 (1995), (citing *R.* 4:46–2).

As there exists no genuine issue as to any material fact, defendant's motion for summary judgment is hereby granted.