EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Plaintiff,

v.

ALTMEYER'S HOME STORES, INC., Defendant.

Civ. A. No. 84–0853.

United States District Court, W.D. Pennsylvania.

Oct. 24, 1988.

Spencer H. Lewis, Jr., Issie L. Jenkins, Wanda Flowers, Ida Chen, E.E.O.C., Philadelphia, Pa. Dist. Office, Philadelphia, Pa., J. Alan Johnson, U.S. Atty., Pittsburgh, Pa., Chris Morkides, Philadelphia, Pa., for plaintiff.

Dennis St. J. Mulvihill, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

ROSENBERG, District Judge.

This matter is now before this court as a sequel to an Order of Court dated October 20, 1987, on the plaintiff's motion for liquidated damages. This court has jurisdiction pursuant to 28 U.S.C. Sections 451, 1337, 1343 and 1345. This action is authorized pursuant to Sections 16(c) and 17, 29 U.S.C. Sections 216(c) and 217 of the Fair Labor Standards Act of 1938, as amended, 29 U.S. Section 201 *et seq.*, (FLSA), to enforce the equal pay requirements in Section 6(d) of the FLSA, 29 U.S.C. Section 206(d). This action is also authorized pursuant to Section 706(f)(1) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e *et seq.* (1978 ed.), (Title VII).

This action was brought by the Equal Employment Opportunity Commission (EEOC) against the Altmeyer's Home Stores, Inc. (Altmeyers), a chain store operator, charging it with the continuous engagement in a discriminatory employment policy and practice based upon sex. It was alleged by the EEOC that the said unlawful employment policy and practice consist-

ed in paying female managers and assistant managers a lower salary than male managers and assistant managers because of their sex. The defendant denied all the charges and asserted that all employees, male and female alike, were and continue to be equally paid in accordance with a system by which employees were hired and promoted in all its stores irrespective of their sex.

This court tried the instant case in June, 1987. In an opinion dated October 20, 1987, this court found that Altmeyers intentionally violated the Equal Pay Act and Title VII of the Civil Rights Act of 1964 by paying lesser wages to a woman than to a man for a job that required equal skill, effort, responsibility and similar working conditions. Accordingly, this court entered an order awarding Patti Shirey, the manager in one of Altmeyer's larger stores, an amount of $12,402.16, with interest from the date of the judgment. 672 F.Supp. 201.

The plaintiff, EEOC, subsequently filed a motion to amend findings and order pursuant to Rule 52(b) of the Federal Rules of Civil Procedure. The plaintiff moved this court to amend its award of $12,402.16 to Patty Shirey to include an equal amount in liquidated damages and post judgment interest in accordance with provisions in the FLSA, 29 U.S.C. § 216(b), and based on this court's finding that the unequal pay was intentional. The plaintiff also moved this court to specify in its order that the defendant equalize Shirey's pay. The defendant opposed this motion and a hearing was held on this matter on December 17, 1987.

In opposing an award of liquidated damages, counsel for the defense urges us to find that the defendant Altmeyers had presented substantial business reasons for hiring Shirey at a lower rate of pay than was earned by Shifflet because of the decrease in size of the Monroeville store: "Specifically, *at the time* that Patti Shirey assumed management of the Monroeville establishment, *the size* of the store *had dropped considerably* and her salary was set commensurate with the lesser responsibility of managing a smaller establish-

ment" (Defense brief 11/9/87, p. 4) (Emphasis added). In light of evidence presented to this court, this assertion is clearly erroneous and misleading.

Patti Shirey was employed as manager of the Monroeville store from 7/1/84 to 2/24/86 (N.T. 348, P.E. 28). The Monroeville store did not decrease in size until August, 1985 (Joint Stipulation of Facts, p. 2). Thus, Shirey managed the larger Monroeville store for over a year prior to its reduction in size. Shirey spent a total of 20 months at the Monroeville store, which means that she spent about 65% of her total tenure at Monroeville managing the store at the same size as it was when managed by Shifflet.

Defense counsel also urges this court to believe that at the time Shirey's salary as manager of the Monroeville store was set, defendant Altmeyer had relied on the advice of Hyman Richman regarding compliance with labor laws: "Mr. Richman testified that he found no violations of the Federal Labor Standards Act at Altmeyers and so advised the defendants. As a former Area Director of the Wages and Hours Division of the Department of Labor (N.T. 758), Mr. Richman was the type of consultant upon whom an employer should be able to rely for advice without fear of imposition of punitive damages" (Defense brief 11/9/87, p. 3–4). This court has carefully reviewed all of Mr. Richman's testimony regarding any *pretrial* opinions he may have formed or advice he may have given to defendant Altmeyer regarding employee salaries (N.T. 762–764, 780–782).

Several factors must be considered in examining Mr. Richman's testimony to determine the amount of first-hand knowledge he had of the employment and pay practices at Altmeyer and how active a role he played while advising Altmeyer on matters relating to sex discrimination. He testified regarding opinions he had formed as to whether or not the Equal Pay Act was violated in several employee situations. It is evident from his testimony that his opinions were based, not on pretrial knowledge, but rather on the testimony he heard while

in the courtroom (N.T. 789, 790, 793, 795, 796, 797).

When asked if he had formed an opinion as to the commitment of violations of the Equal Pay Act between Patti Shirey and Sherman Shifflet, Richman replied *"for the same reason,* I feel the jobs are not comparable" (N.T. 792) (emphasis added). Apparently, the reason referred to by Richman is the one he gave immediately preceeding when testifying about a comparison between two other managers, Terry Plotner and Ronald Hall. The reason he gave for no violation in the Plotner–Hall comparison was "I feel there is *no violation* in that the basis of comparison was invalid" (N.T. 791). Later in cross-examination, Richman again testified that the jobs performed by Shifflet and Shirey were not comparable. When asked what the *difference in the jobs* were, he testified "well, part of the jobs are the people and their experience, and also the matter of the *size* of the store. There was a considerable *diminution* in the *size* of the store than the experience that was brought to the job itself" (N.T. 799). (Emphasis added.) From this statement, it is clear that at least part of Richman's opinion was based on incorrect information. Shirey managed the Monroeville store for more than a year before it was reduced in size.

Additionally, Richman completed his first analysis of the Altmeyer's stores in 1983 (N.T. 781). He then served as a labor consultant in the Altmeyer's stores on an "as needed basis, Mrs. Altmeyer will call me if there are any doubts or any questions" (N.T. 785). Richman testified that since 1983 he continued to monitor the employment and pay practices at Altmeyer's and saw no violation of the Equal Pay Act (N.T. 785–786). Later in cross-examination, Richman testified that he never advised Mrs. Altmeyer that there was no violation of the Equal Pay Act with respect to Kimicata and Wineman. He stated "I did not advise Mrs. Altmeyer that there was no such violation. These people were hired subsequent to my early advice as to methods. I encountered the end result here, and am reacting to what I heard here in the courtroom" (N.T. 797). It is evident

from this testimony and from that preceeding that Richman did not provide ongoing, detailed advice to Mrs. Altmeyer regarding continued compliance with the Equal Pay Act. Testimony following this bolsters, in the mind of this court, the idea that Richman was only peripherally involved. Richman was asked if, while advising Altmeyers, he looked at the records of managers. He testified "I was discussing practices in general" (N.T. 797). Richman could recall discussing the salary of only one person, someone Altmeyer was thinking about hiring in the $20,000 range. Richman testified "She (Altmeyer) talked about someone whom she was hiring in the 20's—and I guess it had to be this person. *That's the only person I can recall....*" (N.T. 797). (Person not identified; emphasis added.)

Based on all of this information, this court is convinced that the consultative duties of Richman were at an extremely superficial level. In the case of Shirey and Shifflet, he based part of his opinion on incorrect information (N.T. 799). He apparently did not look at the records of managers, discussed employment practices only in general, and could recall only one instance in discussing the salary of a potential employee. He based his testimony on his observations in the courtroom, but not from observations of Shirey or Shifflet in the workplace and not from his extensive knowledge of Altmeyers which he would have gained had he closely monitored the hiring and pay practices of Altmeyers. There was no evidence as to how often Richman was consulted, what records, if any, he used, what specific factors he used in his various determinations, or what method he used to compare these unknown factors.

Altmeyer testified that she did not willfully violate the Equal Pay Act (H.Tr. 23) and that she used Richman as a consultant (N.T. 261). Altmeyer testified that she would consult Richman if she had a question relating to personnel, but that he did not develop policies or procedures in Altmeyer's Personnel Manual (N.T. 262). Mrs. Altmeyer provided no testimony that she either consulted Richman or relied on

his opinion regarding the setting of the wages of Patti Shirey. This court finds the evidence insufficient to conclude that Altmeyer relied on the advice of Hyman Richman regarding compliance with labor laws in setting Shirey's salary. This court finds that the decision regarding Shirey's salary was not based on good faith or a reasonable belief that the defendant was in compliance of the Equal Pay Act.

■ Another issue raised by the defendant is the claimed disparity between the respective levels of experience between Shirey and Shifflet. Both Altmeyer and Richman testified about this but this testimony was insufficient to persuade this court that any difference actually existed. This court has already found that Shirey's experience was comparable to that of Shifflet, and no new evidence has been produced to persuade this court to change this finding. Shirey had eight years of experience with Altmeyers prior to her promotion as manager in 1984. She started out as a stock person in 1976 and was promoted to various positions within the company, such as sales person, cashier, head cashier, manager trainee, assistant manager at New Kensington, manager at Vandergrift, and finally manager of the Monroeville store (N.T. 235). This court remains convinced that Shirey's experience with Altmeyers, her continued upward movement through the ranks of Altmeyers, and her extensive knowledge of the policies, procedures and merchandising that resulted from this upward movement when coupled with the premium placed on in-house experience by Altmeyers (N.T. 167–168, 636) is equal or superior to the experience brought to Altmeyers by Shifflet. This court heard testimony that Shifflet was hired because of his background and knowledge of the Pittsburgh market. He worked for Gimbel's Department Store and handled the same type of merchandise as Altmeyers, but apparently this was not in a supervisory capacity (N.T. 627). Shifflet worked in a supervisory capacity with a chain of six stores (N.T. 627). However, this supervision of a chain of six stores involved the Ft. Wayne Candy and Cigar Company which handled merchandise entirely different from that handled by Altmeyers (N.T. 651). The additional testimony provided by Mrs. Altmeyer during the hearing on December 17, 1987, regarding Shifflet's experience does not persuade this court that Shifflet's experience was significantly greater than that of Shirey (H.Tr. p. 23–28).

The defendant has attempted to persuade this court that two other reasons existed for the salary differential between Shifflet and Shirey. The defendant contends that Shifflet performed more duties in his capacity as manager of the Monroeville store than did Shirey in her capacity as manager of the same store. Additionally, the defendant has attempted to show that Shirey required more supervision than did Shifflet. Very little information was provided on these points during the trial. During trial, evidence of a "store manager job description" was entered into evidence. Mrs. Altmeyer testified that the job description was currently in effect at the Altmeyer's home store and that job description was in effect since 1980 (N.T. 169). She testified that this document was a "basic job description" and stated that "you can't put everything into a job description" (N.T. 169). She testified that the job description was circulated to all of the stores and that the duties of the managers could vary dependant upon the needs of the store (N.T. 170). Later, Altmeyer testified that Shirey was paid less than Shifflet: "Yes, because that was—there is reasons for that and I can explain them. Because the job, it was just —I can explain the difference if you want me to" (N.T. 267). The differences were not explained by Altmeyer during the trial. She later testified about Patti Shirey's tenure and positions with the company. She testified that Shirey started with the company in 1976, was promoted to assistant manager in New Kensington in 1981, and is currently manager of the New Kensington store. She testified that Shirey currently has extra responsibility in addition to those routine duties she provides as manager. Altmeyer testified that Shirey currently has extra responsibilities as a consultant in buying (N.T. 278–279). At trial, Altmeyer did not testify as to Shirey's diminished

responsibilities while she served as manager of the Monroeville store.

However, during the Hearing to determine whether or not liquidated damages should be awarded, Altmeyer testified that Shifflet performed duties that Shirey did not perform while Manager of Monroeville and that Shirey required more supervision while she was Manager of the Monroeville store (H.Tr. 13–20, 41–42). This court is unpersuaded by the evidence Altmeyer presented on these issues during the Hearing. Altmeyer testified that in *one* instance Shifflet handled a complaint from the Consumer Protection Bureau (H.Tr. 15); that on *one* occasion Shifflet wrote a memorandum to her critiquing the store's check cashing policies (H.Tr. 16); that she could depend on Shifflet to take care of complaints or problems relating to his store (H.Tr. 16); that she could "touch base" with Shifflet when she had a problem (H.Tr. 27); that she depended upon Shifflet's experience (H.Tr. 38); that after Shifflet left, the manager *might* require a little more help, "they might call in a little more, you know, more, and you might have to help them a little bit more" (H.Tr. 40–41); that the company had to commit more supervisor time when Shirey became manager (H.Tr. 42); that Shifflet could function in other aspects (H.Tr. 56); and that on *one* occasion, Shifflet wrote a letter to National Check Records Corporation (H.Tr. 59).

Mrs. Altmeyer was unable to estimate how much time Shifflet spent handling these matters (H.Tr. 76). Altmeyer testified that she was not Shifflet's supervisor and was unable even to estimate whether an excess of five percent of Shifflet's time was spent on these duties (H.Tr. 76). No other evidence was presented to show how much time Shifflet spent on these duties. This evidence is not of a sufficient substance to be considered as a basic reason to support Altmeyer in her defense. This scant evidences does not persuade this court that these duties were a routine part of Shifflet's job. These job duties appear to have been the exception rather than the rule, and were inconsequential differences which did not justify a decreased salary for Shirey.

At the December 17, 1987 Hearing, but not at the trial, Altmeyer testified that Shifflet was able to handle criminal complaints and Shirey was not called upon to do this because she felt Shirey was unable to do this (H.Tr. 17–18, 54, 55). The defendant would have this court believe that handling such criminal complaints was a routine and major portion of Shifflet's job. However, the defendant was able to produce only two criminal complaints regarding bad checks. At no time was Altmeyer able to estimate what percentage of Shifflet's time was spent toiling over criminal complaints with these two cases (H.Tr. 17). This court knows that these are quite simple matters that could have been handled by Shirey as a business woman. Because of the lack of evidence, this court is only able to conclude that the time spent by Shifflet on criminal complaints was so inconsequential as to constitute only a minor portion of his job responsibilities. Such inconsequential differences in job duties do not constitute a defense to a violation of the Equal Pay Act, *Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

Lastly, this court will deal with the defendant's assertion that Shirey's pay should not be equalized to the amount earned by Shifflet. It is ludicrous to argue that Shirey, after 12 years with Altmeyers, should not be paid an amount equal to that of Shifflet. This court has already determined that Shirey should have been paid at the same rate as Shifflet. Walter Swesky, General Supervisor for Altmeyers, testified that Altmeyers did not ask any manager, man or woman, to take a pay cut when transferred to another store (N.T. 704). Shirey is currently manager of the New Kensington store. New Kensington, like Monroeville, is classified as a class "A" (larger) store. Mrs. Altmeyer testified that Shirey currently serves, not only, as manager, but has extra responsibilities as a consultant in buying (N.T. 278–279). Shirey would certainly have continued to earn an equal amount of pay after her promotion to the New Kensington store. I find that Shirey is, therefore, entitled, in

addition to the original award of back pay, to an equalization of pay.

In summary, this court finds that both Shifflet and Shirey came to the Monroeville store with an equal amount of experience that would not justify a differential in pay; that reduction in store size did not constitute justification for paying Shirey less money because the store was not reduced in size until more than a year after Shirey became manager; and, that the duties of the Managers, Shirey and Shifflet, were comparable, and any differences which existed were so minor and inconsequential that they did not provide an adequate basis to justify paying a higher salary to Shifflet and denying it to Shirey. Based on the above findings, this court finds that Altmeyers intentionally and wilfully violated the Equal Pay Act by paying a female less than a male for jobs of equal skill and effort, responsibility and similar working conditions. The question before this court now is what standard should be applied in the determination of damages.

Both the plaintiff and defendant in this instant action urge this court to rely on cases that interpret different statutory provisions that award back pay in various civil rights actions. The plaintiff asks this court to rely on the test of "good faith and reasonable grounds" and award damages based on various provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. The defendant asks this court to rely on the "reckless disregard" standard established by the Supreme Court for cases arising under the Age Discrimination in Employment Act (ADEA) 29 U.S.C. § 626(b).

■ The first statutory provision to be considered is the Equal Pay Act of 1963, 29 U.S.C. § 206 d(1). The Equal Pay Act must be read in conjunction with the Fair Labor Standards Act of 1938 and the Portal-to-Portal Act, 29 U.S.C. § 256. The Equal Pay Act does not provide for back pay, but back pay and liquidated damages can be recovered by the employee under the provisions of the FLSA, 29 U.S.C. § 216(b). An employer may then defend against damages under the Portal-to-Portal

Act by establishing that he acted in good faith and had reasonable grounds to believe that he was not in violation of the statute, 29 U.S.C. § 260.

In comparing the bases of relief in the FLSA and the ADEA, it is crucial to note the differences in terminology of the statutes which make the bases for relief completely different. In an Equal Pay Act case, "any employer who violates the provisions of Section 206 or Section 207 of this Title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and *in an additional equal amount as liquidated damages*," 29 U.S.C. § 216(b) (Emphasis added). This language entitles an aggrieved employee, as a matter of course, to liquidated damages. When a violation of the Equal Pay Act is found, the presumption is that the employee should receive liquidated damages. However, the employer may, pursuant to the provisions of the Portal-to-Portal Act, provide a defense in order to avoid payment of liquidated damages:

"in any action commenced prior to or on or after May 14, 1947, to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. Section 201 et. seq., if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in Section 216 of this Title." 29 U.S.C. § 260.

In other words, there is a presumption in favor of the employee receiving liquidated damages. The burden of proof then shifts to the employer, pursuant to the Portal–to–Portal Act, to show that he acted in good faith and with reasonable grounds for believing that his act or omission was not a

violation of the FLSA. The court, then, has the discretion, pursuant to the provisions of the Portal-to-Portal Act, not to award liquidated damages when the employer meets this burden of proof.

The ADEA also expressly provides for liquidated damages in the case of a violation, but the wording of this statute is completely different: "provided, that liquidated damages shall be payable *only* in cases of *willful* violations of this chapter," 29 U.S.C. § 626(b) (Emphasis added). The Portal-to-Portal Act is also incorporated into the ADEA and may provide a defense if willfulness is shown by the plaintiff. In an ADEA case, the initial burden is clearly upon the plaintiff to establish that the violation was indeed willful. Once the plaintiff has met this burden, the burden then shifts to the defendant to show that the burden was not willful in order to avoid payment of liquidated damages. The court then has the discretion, pursuant to the provisions of the Portal-to-Portal Act, not to award liquidated damages when the employer meets this burden of proof.

The defendant urges this court to decide the instant case in accordance with the standard established by the Supreme Court in *Trans World Airlines v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Based upon close inspection of this case in conjunction with a fair reading of the plain language of the Equal Pay Act, the FLSA and the ADEA, this court is convinced that *Thurston* is not controlling in the instant case. *Thurston* deals with the willfulness standard as it applies to the liquidated damages provision in the ADEA *not* the liquidated damages provision of the FLSA or the Portal-to-Portal Act applicable to the Equal Pay Act. In *Thurston,* the Supreme Court specifically recognized that the remedial provisions of the FLSA and ADEA are not identical. The Court also recognized that Congress did not incorporate several FLSA sections into the ADEA. Importantly, the Court outlined the differences in the remedial provisions of both statutes:

"moreover, Section 16(b) of FLSA, which makes the award of liquidated damages mandatory is significantly qualified in A.D.E.A., Section 7(b) by a proviso that a prevailing plaintiff is entitled to double damages 'only in cases of willful violations.' 29 U.S.C. Section 626(b)." *Thurston* at 125, 105 S.Ct. at 623.

In *Thurston,* the Supreme Court specifically rejected the "in the picture" standard for willfulness because this interpretation frustrated the two tiered liability scheme anticipated by Congress in drafting the ADEA. Instead, the Supreme Court adopted a "reckless disregard" standard to examine willfulness of the employer to determine liquidated damages in ADEA cases.

It is the belief of this court that the Supreme Court did not intend this standard to be applied to Equal Pay Act cases. The Supreme Court specifically noted the differences in the remedial provisions of the FLSA and the ADEA. However, in recognizing these differences, the Supreme Court made no statements that would extend the "reckless disregard" standard to the liquidated damages provision of the FLSA. After carefully searching the entire opinion, this court is convinced that the United States Supreme Court did not intend in any way to extend *Thurston* to cover the liquidated damages provision in the FLSA.

Next, the defendant, quite correctly, stated that *Dreyer v. Arco Chemical Co.,* 801 F.2d 651 (3d Cir.1986), cert. den. 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987), has adopted the *Thurston* standard for willfulness which distinguishes between a mere violation which is almost always intentional, and a willful violation which would result in liquidated damages. The defendant observed that the Third Circuit specifically noted that liquidated damages were intended to be punitive in nature and that liquidated damages should be awarded only in cases of outrageous conduct. The defendant also stated that the Third Circuit "served notice" that the standard to be adopted by the district court should, in determining an award of liquidated damages, use the standard for punitive damages established in Section 908, Restatement Torts 2nd. Counsel for the defendant

then erroneously argues that this is the correct standard to be applied in an EPA case. The defendant fails to recognize that *Dreyer*, as well as *Thurston*, both specifically deal with ADEA, *not* EPA cases. Nowhere in either opinion did the court rule that an intentional violation of the EPA is insufficient to award liquidated damages. Neither the Supreme Court nor the Third Circuit has ruled or implied that a violation must be wanton and outrageous before damages will be awarded under the FLSA for EPA cases.

This court must next consider the defendant's assertion that the standard for willfulness in Equal Pay Act cases was articulated more specifically in the Supreme Court case, *McLaughlin, Secretary of Labor v. Richland Shoe Company,* —— U.S. ——, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). This decision applied the willfulness standard adopted in *Thurston* to the statute of limitations provision of the FLSA. The statute of limitations provides that actions must be commenced within two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued," 61 Stat. 88, 29 U.S.C. Section 255(a). In this statute of limitations provision, as in the ADEA, the word willful is used. In the liquidated damages provision of the FLSA, the word willful is *not* used: "any employer who violates the provisions of Section 206 or Section 207 of this Title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. Section 216(b). It is this distinction, evident after a fair reading of the plain language of the statute's provisions, coupled with a careful reading of *Richland Shoe* that convinces this court that *Richland Shoe* does not control in the determination of liquidated damages in Equal Pay Act cases. In *Richland Shoe*, the Supreme Court specifically limited the application of the *Thurston* willfulness standard to the statute of limitations portion of the FLSA.

It is this court's opinion that there is an extreme difference between a provision in the statute of limitations for a willful violation and the mandatory liquidated damages provision of the FLSA as applied to Equal Pay Act's cases. There is no indication in the Supreme Court's decision that it intended to transplant its definition of willfulness onto all sections of the FLSA including those Sections not requiring an inquiry into the issue of willfulness.

Because the *Thurston* standard is inapplicable in the instant case, this court must determine what standard is applicable to award liquidated damages in accordance with the provisions of the Equal Pay Act and FLSA. The Third Circuit has ruled that an employer must show good faith and reasonable grounds in order to be relieved of his liability for liquidated damages. *Williams v. Tri–County Growers, Inc.,* 747 F2d 121 (3d Cir.1984). The court held that

> As noted above, Section 11 of the Portal to Portal Act provides employers with the defense to the otherwise mandatory liquidated damage provision of 16(b) of the FLSA and permits the District Court, in its sound discretion, to award no, or less, liquidated damages. 29 U.S.C. 260. *Id.* at 128–129.

Before the District Court may exercise its discretion under the Portal-to-Portal Act to relieve an employer from liability for liquidated damages, the employer has the *"plain and substantial* burden of persuading the court by proof that his failure to obey the statute was both in good faith predicated upon such reasonable grounds that it would be unfair to impose upon him more than an a compensatory verdict" (emphasis added). *Marshall v. Brunner,* 668 F.2d 748 at 753 (3rd Cir.1982) (citing *Rothman v. Publicker Industries,* 201 F.2d 618, at 620 (3rd Cir.1953)); See also *Guthrie v. Lady Jane,* 722 F.2d 1141 at 1149 (3rd Cir.1983). Our Third Circuit also determined that the District Court is without discretion to deny the liquidated damages if an employer fails to produce plain and substantial evidence to satisfy the requirements of good faith and reasonableness.

In *Tri County Growers*, the court stated that the burden is not on the employee to establish an intentional violation of the Act. The court stated that the burden was on the employer to establish that he acted in good faith and reasonably in attempting to ascertain and follow the requirements of the Act. Accordingly, in an award of liquidated damages, this court must make specific findings of fact regarding the defendant's burden of proof, its good faith and its reasonableness in believing that it was not in violation of the Act. *Guthrie v. Lady Jane Collieries, Inc.,* 722 F.2d 1141 (3d Cir.1983). *Marshall v. Brunner,* 668 F.2d 748 (3d Cir.1982), explains that the good faith requirement of the Act imposes on the employer an objective standard by which his conduct may be judged. In the instant case, the findings of fact by this court show that the defendant Altmeyer did not produce plain and substantial evidence to convince this court that it acted in good faith and had reasonable grounds for believing that it was not in violation of the Act. Thus, this court will award liquidated damages to Shirey in an amount equal to the entire amount of back pay awarded.

No one will dispute the fact that women have been from time immemorial considered to be unequal in the ordinary work in which men were engaged. They were assigned the jobs, besides child rearing, of housekeeping, sewing, weaving, teaching and other similar light occupations which men deigned beneath their masculine dignity to participate or to compete with women.

Times have changed and Congress has enacted laws in an effort to correct the thinking of these centuries-old ideas. So, when Congress enacted the Equal Pay Act, it had in mind that women could do work which was equal to and often superior to that of men and should be compensated equally. The times have proved this to be true by reason of the fact that today we find women in every area of business and at the heads of companies functioning equally and sometimes better than their male counterparts and predecessors. Congress found it to be equitable that the salaries in the work field should be equal between men and women.

We, too, face the truth and like the fact that life is made up of different sexes. We have in our own homes wives, sisters, daughters and other relatives whom we love, but whom we still think of as women. We have almost an inborn feeling that we should neither let women do certain kinds of work, such as police or iron workers, nor allow them to perform other heavy labor. Yet our active lives have seen changes occur where women are police and industrial and commercial workers. Thus, we are cognizant of women not only in our personal lives, but in our business lives. So, it was in this case, where Mrs. Altmeyer, even though a woman herself and the one responsible for hiring and assigning jobs to both men and women, had the choice of picking Shirey. It is noticeable that Shirey came into the business as a kindergartner and moved into the elementary and higher grades of employment. She was a product of Altmeyer's employment system and she was what they made her and what they taught her. She learned every phase of their business in merchandising until she was promoted into the top job with which we are concerned as a store manager. Mrs. Altmeyer knew this and, yet, she chose to pick someone who claimed to have been in a similar, but not the same, retail business of the kind with which they were concerned. This was a man who claimed to be knowledgeable in every phase of the business, but who turned out to be inadequate. Shirey, however, was under their microscopic observation constantly and, yet, when they moved her into Monroeville, they gave her a lesser wage than her predecessor was given, a man who had less viable, pertinent experience than Shirey. This court believes that this was done without malice by Mrs. Altmeyer, but that it was done intentionally and knowingly because Shirey was a woman. For that reason, Altmeyers was in violation of the statute.

This court does not intend to create the slightest animosity in the relationship of an employer and an employee because their relationship has always been good. No conclusion should be drawn from the state-

ments this court has made here that the company as a whole has been more partial to male employees than to female employees. All this court does here is show that in this one instance there can be a lapse on the part of an employer against a female employee which the statute forbids. That is what happened in this case and this court so finds. The motion of the plaintiff will be granted and the defendant will be assessed liquidated damages and Shirey's pay will be equalized to that received by Shifflet.

The Findings of Fact and Conclusions of Law are incorporated in this Opinion in accordance with Federal Rule of Civil Procedure 52.[1]

## ORDER OF COURT

In accordance with the foregoing Opinion and Findings of Fact, contained therein, I hereby find a case of intentional discrimination in the case of Patti Shirey and judgment is rendered in favor of the plaintiff, Equal Employment Opportunity Commission, for the benefit of Shirey in the amount of $12,402.16 in back wages due as of April 30, 1987. Beginning May 1, 1987, the defendant is ordered to equalize Ms. Shirey's pay to the amount received by the male predecessor, Sherman Shifflet. The defendant is also ordered to pay plaintiff Equal Employment Opportunity Commissions for the benefit of Ms. Shirey an equal amount in liquidated damages on the entire amount of back pay with interest from the date of this judgment.

---

1. Rule 52. Findings by the Court

"(a) Effect. In all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately the conclusions of law thereon.... If an opinion or memorandum of decision is filed, it will be sufficient if the findings and conclusions of law appear therein."